IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

DUANE HENDERSON, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

CENTER FOR SCIENCE IN THE PUBLIC INTEREST,

    Defendant.

Case No. 22-cv-00856-HYJ-RSK
Chief Judge Hala Y. Jarbou
Magistrate Judge Ray Kent

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**CONCISE STATEMENT OF ISSUE PRESENTED**

1. Whether Plaintiff Duane Henderson's claims under the Michigan Preservation of Personal Privacy Act ("PPPA") should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because he fails to plausibly allege Defendant Center for Science in the Public Interest unlawfully disclosed his information in violation of the PPPA?

    Defendant's answer: Yes.

    Plaintiff's likely answer: No.

2. Whether Defendant CSPI is entitled to entry of summary judgment pursuant to Fed. R. Civ. P. 56 because it is an undisputed fact, established by the Declaration of Denise Elliott, attached as Ex. A, that at no time during the time period June 6, 2016 through and including July 31, 2016 did CSPI disclose any of Plaintiff Henderson's Private Reading Information in violation of the PPPA?

    Defendant's answer: Yes.

    Plaintiff's likely answer: No.

## **CONTROLLING OR MOST IMPORTANT AUTHORITY**

The controlling authority for this Motion includes:

1. Fed. R. Civ. P. 12(b)(6).
2. Fed. R. Civ. P. 56.
3. Preservation of Personal Privacy Act, M.C.L. §§ 445.1711, *et seq.*
4. 2016 Mich. Pub. Acts No. 92.
5. M.C.L. § 600.5805.
6. M.C.L. § 600.5813.
7. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
9. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).
10. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).
11. *Nashel v. N.Y Times Co.*, No. 22 Civ. 10633 (SJM), 2022 U.S. Dist. LEXIS 185552 (E.D. Mich. Oct. 11, 2022).
12. *Wheaton v. Apple Inc.*, No. 19 Civ. 2883 (WHA), 2019 U.S. Dist. LEXIS 185524 (N.D. Cal. Oct. 24, 2019).

I.      **INTRODUCTION**

Reduced to its essence, Plaintiff's Complaint alleges that he was a subscriber to CSPI's *Nutrition Action* health letter and that, "during the relevant pre-July 31, 2016 time period," CSPI violated Plaintiff's statutorily protected right to privacy in his reading habits codified in Michigan's Preservation of Personal Privacy Act ("PPPA"), M.C.L. §§ 445.1711, *et seq.*, by disclosing his "Private Reading Information" to various third parties. Complaint ¶ 1, ECF-1 PageID 1-2.[1] Plaintiff seeks statutory damages under a since amended version of the PPPA, individually and on behalf of a putative class, for alleged violations occurring during this period. *Id.* ¶ 74, PageID.24. Plaintiff's claims fail for at least two reasons.

*First*, the Complaint consists of nothing more than vague and conclusory allegations, mostly pled on information and belief, that fail to state a claim for a violation of the PPPA. Subject

---

[1] Plaintiff's allegation that Defendant's conduct occurred in "the relevant pre-July 31, 2016 time period" refers to a window of time created by the statute of limitations and the sunsetting availability of statutory damages, which act as bookend constraints on Plaintiff's PPPA claim. On the one hand, even accepting for the purpose of CSPI's Motion only Plaintiff's assertion that the statute of limitations for PPPA claims is 6 years and that the statute of limitations period was tolled for 101 days during the COVID-19 pandemic, Complaint ¶ 1, n.1, ECF-1 PageID.2, any PPPA violations alleged prior to June 7, 2016—six years and 101 days before the filing date—are time barred. *See Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 675 (E.D. Mich. 2022) ("A PPPA claim accrues 'at the time Defendant committed its alleged [PPPA] violations.'" (*quoting Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 634 (E.D. Mich. 2017)). On the other hand, due to amendments to the PPPA, Plaintiff may not seek statutory damages for violations that occurred after July 30, 2016. *See id.* at 670. Thus, the "relevant" time period referred to in the Complaint is between June 7 and July 30, 2016. Because the period can differ depending on the methodology for counting days, out of an abundance of caution, and for the purposes of CSPI's Motion only, CSPI utilizes a relevant time period of between June 6 and July 31, 2016.

Defendant is aware that this Court has held that the six-year statute of limitations provided for in M.C.L. § 600.5813 is applicable to PPPA claims. *Krassick v. Archaeological Inst. of Am.*, No. 2:21-cv-180, 2022 U.S. Dist. LEXIS 103417, at *14 (W.D. Mich. June 9, 2022) (attached as Ex. B). Defendant does not waive its affirmative defenses, however, that Plaintiff's claims are barred by the three-year statute of limitations provided for in M.C.L. § 600.5805 and/or that the Plaintiff's claim is not subject to COVID-19 tolling.

1

to certain exceptions, the PPPA prohibits a publisher of written materials from disclosing information concerning the purchase of written materials by a customer that indicates the identity of the customer. M.C.L. § 445.1712. But the Complaint contains no specific allegations of the actual disclosure by CSPI of any customer's information, let alone Plaintiff's, during the relevant approximately 7-week window in mid-2016. Significantly, in a substantially similar case, Judge Stephen J. Murphy, III, recently dismissed a PPPA action with prejudice for failing to adequately plead disclosure, even though the allegations supporting disclosure were more detailed than here. *Nashel v. N.Y Times Co.*, No. 22 Civ. 10633 (SJM), 2022 U.S. Dist. LEXIS 185552 (E.D. Mich. Oct. 11, 2022) (attached as Ex. C). Defendant, therefore, has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

*Second*, based on the undisputed facts set forth in the Declaration of Denise Elliott, attached as Exhibit A, which establish that at no time between June 6, 2016 and July 31, 2016 (the time frame during which any PPPA claim arguably would not be barred by the six year statute of limitation as extended by 101 days) did Defendant CSPI disclose any of Plaintiff Henderson's Private Reading Information as alleged in the Complaint. Defendant, therefore, has moved, in the alternative, for summary judgment in its favor pursuant to Fed. R. Civ. P. 56.

II.     <u>**LAW AND ANALYSIS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>

    A.     **Standard of Review Pursuant to Rule 12(b)(6)**

The Court should dismiss the Complaint under Rule 12(b)(6) if it determines that Plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, the Complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

2

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

In other words, a plaintiff's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). More, while a court must assume well-pleaded factual statements are true, it need not accept as true conclusory allegations, legal conclusions, or unwarranted factual inferences. *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 550 (6th Cir. 2020) (*quoting Jackson v. Pro. Radiology Inc.,* 864 F.3d 463, 465-66 (6th Cir. 2017)).

### B.  Plaintiff Fails to Allege Facts Showing that Defendant Disclosed His *Nutrition Action* Subscriber Data Between June 6 and July 31, 2016

To plead a claim under the PPPA, Plaintiff must allege facts that, if proved, would show that Defendant disclosed information personally identifying Plaintiff as a purchaser of *Nutrition Action,* without consent, to a third party. M.C.L. § 445.1712. Moreover, the Plaintiff must plausibly demonstrate that such violations occurred in an extremely narrow 56-day window in mid-2016. *See supra* note 1.

Far from plausibly alleging sufficient facts to demonstrate a claim for relief, Plaintiff's PPPA claims are broad and conclusory, "cut and paste" allegations, pled largely on information and belief, that Defendant disclosed Plaintiff's subscriber information to various third parties during the relevant period. *See, e.g.*, Complaint ¶¶ 1, 42-49, ECF-1 PageID.1-2, 17-19. Plaintiff does not substantiate these barebones statements, thus failing to provide sufficient facts from which this Court could draw a plausible inference that Defendant violated Plaintiff's rights under the PPPA during the relevant period. See *In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*, 756 F.3d 917 (6th Cir. 2014) (allegations based on information and belief don't satisfy plausibility standard); *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046 (6th

3

Cir. 2011) (plausibility standard requires plaintiff to have greater knowledge of facts because he can't use discovery to obtain the facts).

In *Nashel*, a PPPA action filed by the same plaintiff's counsel as here, Judge Murphy granted the defendant New York Times' motion to dismiss with prejudice for failure to plead a plausible claim under the PPPA. 2022 U.S. Dist. LEXIS 185552. Just as Plaintiff attempts to do here, the *Nashel* plaintiffs supported the allegations in their complaint with third-party data cards from a different time period. *Id.* at 3, 10-11 (submitting data cards from nearly a decade before the relevant 2016 period). The *Nashel* plaintiffs went even further, however, and made allegations about the defendant's privacy policy and cited a case study concerning Virginia Beach, Virginia's renting of a list of defendant's subscriber's email addresses. *Id.* at 11-12.

Nonetheless, the *Nashel* court found that "Plaintiff's allegations, even in light of that evidence, fail to clear the plausibility threshold." *Id*. The evidence relied upon by plaintiffs—the third-party data cards, the defendant's privacy policy, and the Virginia Beach case study—"create[d] only suspicion as to whether Defendant violated the PPPA during the pre-July 31, 2016 period." *Id*. And, "'a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient.'" *Id.* (*quoting Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)).[2]

---

[2] In addition to *Nashel*, in another action alleging claims under the Michigan PPPA brought by the same lawyers as here, the court dismissed a similar complaint against Apple for failure to plead plausible facts supporting its PPPA claim. *See Wheaton v. Apple Inc.*, No. 19 Civ. 2883 (WHA), 2019 U.S. Dist. LEXIS 185524 (N.D. Cal. Oct. 24, 2019) (attached as Ex. D). As here, the *Wheaton* plaintiffs claimed that Apple "rented, transmitted, and disclosed [consumers] personal listening information to third parties." *Id.* at 2. The *Wheaton* court dismissed the plaintiffs' PPPA claim because "[t]he complaint fail[ed] to plausibly allege with enough facts that Apple disclosed plaintiffs' personal listening information to third-party data brokers and similar entities," and the screenshots on which the complaint depended, including similar data cards as to the one Plaintiff relies on here, "d[id] not show that Apple disclosed customers' personal listening information." 2019 U.S. Dist. LEXIS 185524, at *12. The same result should follow here.

4

Here, as in *Nashel*, Plaintiff Henderson creates, if anything, nothing more than mere suspicion of a PPPA violation. Outside of the clearly insufficient "formulaic recitation of a cause of action's elements" that dominate the Complaint, *Twombly*, 550 U.S. at 548, Plaintiff Henderson makes the following three allegations: (1) he was able to find a third-party data card published by Wiland, similar to the one attached to the *Nashel* complaint, that offered to sell certain information about some of *Nutrition Action's* active subscribers **after June 30, *2022***; (2) he vaguely alleges that similar cards were available during the relevant time period in June-July 2016; and (3) he allegedly saw a "dramatic uptick" in junk mail during the relevant timeframe. *See* Complaint ¶ 2-3 & Complaint, Ex. A, PageID.3-4, 30.

1. **The *2022* Data Card**

As an initial matter, the sole piece of so-called "documented evidence" Plaintiff relies upon is a third-party data card published by Wiland, *See* Complaint ¶ 2 & Complaint, Ex. A, PageID.3, 30. Neither the timing nor the content of this data card supports Plaintiff's allegations that Defendant CSPI violated the PPPA during a roughly seven-week period in **2016**. At most, the data card shows that after June 30, 2022— nearly *six years* after any alleged statutory violation—a third party offered to sell certain information about some of *Nutrition Action*'s active subscribers. *Id.* Just as in *Nashel*, the relied upon a third party's data card from an irrelevant and distant time period does not rise to the level of the requisite plausible inference. *Iqbal*, 556 U.S. at 678.

2. **The Data Cards Supposedly from the Relevant Time Period**

Plaintiff attempts to correct this fatal timing problem by alleging, in conclusory fashion, that a "substantially similar" data card was available "as far back as the beginning of 2015 and throughout the entire pre-July 31, 2016 period" and was "publicly advertised by CSPI." Complaint ¶ 2, ECF-1 PageID.4. Notably, despite Plaintiff's counsel being aware from *Nashel* of the timing

5

problem with the 2022 data card, Plaintiff did not attach, quote from, or provide any information about this supposed "publicly advertised" data card from the relevant period, leaving the Court to speculate as to its contents, if not its existence.

This Court need not – and should not – accept as true such "conclusory allegations." *Davis*, 980 F.3d at 550; *Nashel*, 2022 U.S. Dist. LEXIS 185552, at *11-12 (Virginia Beach case study did not support plaintiffs' claim in part because it didn't indicate "what information the subscriber list contained"; alleging that Defendant's "disclosure practices as advertised in the 2007 and 2008 data[ ]cards" continued into the relevant time period "relied on a legal-conclusion inference"); *Wheaton*, 2019 U.S. Dist. LEXIS 185524, at *11 (refusing to "speculate" as to the meaning of certain elements of the data card proffered by plaintiffs).

In any event, the content of the 2022 data card or any "similar" data card does not establish that Defendant CSPI plausibly violated the PPPA by disclosing Plaintiff Henderson's information, without his consent, to a third party that personally identifies him as having purchased *Nutrition Action* from Defendant. The data card does not explain the source of any information available in the mailing list, Complaint ¶ 2, PageID.3-4, meaning that there is no connection between the data card and any alleged conduct by Defendant CSPI. As a result, "nothing on the data cards explains how [Wiland] received Defendant's subscription list" and therefore "fail[s] to support a crucial element of Plaintiffs' alleged action: that *Defendant* engaged in the business of selling written material to disclose information personally identifying the customer." *Nashel*, 2022 U.S. Dist. LEXIS 185552, at *13 (internal quotation marks omitted) (emphasis in original). This is a "gaping omission" that requires a "large inferential leap" to connect Defendant's alleged conduct to the data cards, and Plaintiff fails to "create a reasonable inference of Defendant's culpability," just as the *Nashel* court found. *Id.* at 13-14.

### 3. The Alleged Uptick in "Junk Mail"

Finally, the only other remaining allegation supporting Plaintiff's claims is that he allegedly saw a "dramatic uptick" in junk mail during an undefined pre-July 31, 2016 timeframe. *See, e.g.*, Complaint ¶¶ 3, ECF-1 PageID.4. Setting aside how Plaintiff plausibly can recall the volume of junk mail he received in an undefined period more than six years ago, the allegation provides no support for Plaintiff's PPPA claims. There could be any number of reasons for an uptick in his junk mail, including for some of the reasons Plaintiff himself pleads. Complaint ¶¶ 26, 34, PageID.12, 15 ("[A]n entire industry exists while companies . . . collect massive databases of information about consumers"; "disclosing subscriber information to . . . third parties is a widespread practice in the publishing industry"). The same allegation was made in *Nashel* to no avail. *Nashel*, 2022 U.S. Dist. LEXIS 185552, at *2.

In sum, Plaintiff has not, and cannot, cross the "line between possibility and plausibility of entitle[ment] to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted). His Complaint should be dismissed with prejudice under Rule 12(b)(6).

### III. STATEMENT OF UNDISPUTED FACTS, LAW AND ANALYSIS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. Statement of Undisputed Facts

1. CSPI publishes a health letter called *Nutrition Action*. Elliott Declaration, Ex. A ¶ 1.

2. Plaintiff Duane Henderson was not a subscriber to *Nutrition Action* "during the relevant pre-July 31, 2016 time period" (*i.e.,* during the time period from June 6, 2016 through July 31, 2016). *Id.* ¶ 5

3. Plaintiff Duane Henderson was a subscriber to *Nutrition Action*; however, his subscription expired as of March 31, 2013, and he did not resume his subscription to *Nutrition Action* until February 5, 2020. *Id.*¶ 6.A.

7

4. At no time during the time period from June 6, 2016 through July 31, 2016 did CSPI (a) disclose Plaintiff Duane Henderson's Private Reading Information to data aggregators, data appenders, and/or data cooperatives; or (b) rent or exchange mailing lists containing Duane Henderson's Private Reading Information to third parties seeking to contact *Nutrition Action* subscribers. *Id.* ¶ 6.B.

5. At no time during the time period from June 6, 2016 through July 31, 2016 did CSPI disclose Duane Henderson's Private Reading Information, which identified him as a *Nutrition Action* customer. *Id.* ¶ 6.C.

6. At no time during the time period from June 6, 2016 through July 31, 2016 did CSPI disclose mailing lists containing Plaintiff Duane Henderson's Private Reading Information to data aggregators and data appenders. *Id.* ¶ 6.D.

7. At no time during the time period from June 6, 2016 through July 31, 2016 did CSPI disclose mailing lists containing Plaintiff Duane Henderson's Private Reading Information to data cooperatives. *Id.* ¶ 6.E.

8. At no time during the time period from June 6, 2016 through July 31, 2016 did CSPI rent or exchange its mailing lists containing Plaintiff Duane Henderson's Private Reading Information, enhanced with additional information from data aggregators and appenders, to third parties. *Id.* ¶ 6.F.

9. At no time during the time period from June 6, 2016 through July 31, 2016 did CSPI disclose to persons other than Plaintiff Duane Henderson records or information concerning Plaintiff's purchase of written materials from CSPI to persons other than Plaintiff. *Id.* ¶ 6.G.

10. At no time during the time period from June 6, 2016 through July 31, 2016 did CSPI disclose information which revealed Plaintiff Duane Henderson's name and address, whether he

8

subscribed to *Nutrition Action,* or his identity. *Id.* ¶ 6.H.

11. At no time during the time period from June 6, 2016 through July 31, 2016 did CSPI disclose Plaintiff Duane Henderson's Private Reading Information to any third party. *Id.* ¶ 6.I.

12. CSPI did not disclose Plaintiff Duane Henderson's Private Reading Information to a third party at least between June 6, 2016 and July 31, 2016. *Id.* ¶ 6.J.

### B. Standard of Review Pursuant to Rule 56

CSPI adopts this Court's recent detailed description of the standard applicable to consideration of a motion for summary judgment:

> Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (*quoting* Fed. R. Civ. P 56(c)) (internal quotations omitted). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289). When considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249.

*Ries v. McDonald's USA, LLC*, No. 20 Civ. 2 (HYJ), 2021 U.S. Dist. LEXIS 233072, at *4 (W.D. Mich. Dec. 6, 2021) (attached as Ex. E).

### C. The Undisputed Facts Show that CSPI Did Not Disclose Plaintiff's Private Reading Information in violation of the PPPA Between June 6 and July 31, 2016.

The Complaint is entirely premised on alleged disclosures of Plaintiff's Private Reading Information by CSPI "during the relevant pre-July 31, 2016 time period." *See, e.g.*, Complaint ¶¶

9

1, 3, 61-64, 66-67, 70-73, PageID.1-4, 22-24.

As explained above at note 1, assuming for the purposes of CSPI's Motion only that Plaintiff is correct that the six year statute of limitations applies and that the statute of limitations was extended by 101 days due to COVID-19, *see* Complaint ¶ 1 n.1, PageID.2, on its face, the Complaint only alleges CSPI's disclosure of Plaintiff's Private Reading Information in violation of the PPPA during the time period June 6 through July 31, 2021.

The undisputed material facts set out in the Elliott Declaration, Ex. A, establish that CSPI did not disclose Plaintiff Duane Henderson's Private Reading Information in violation of the PPPA at any time between June 6 and July 31, 2016.

Thus, the undisputed material facts establish that, contrary to the allegations of the Complaint, at no time between June 6 and July 31, 2016 did CSPI disclose Plaintiff Henderson's Private Reading Information, as alleged in the Complaint. Therefore, CSPI did not violate Henderson's rights under the PPPA as alleged in the Complaint.

A PPPA claim accrues "at the time Defendant committed its alleged [PPPA] violations." *Perlin*, 237 F. Supp. 3d at 634. Disclosure by CSPI of Plaintiff's Private Reading Information in violation of the PPPA "during the relevant pre-July 31, 2016 time period" (*i.e.*, between June 6, 2016 and July 31, 2016) is an essential element of Plaintiff's cause of action for a violation of the PPPA for which Plaintiff bears the burden of proof. Because Plaintiff cannot carry this burden, CSPI is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, dismiss this case with prejudice, and award Defendant

such other relief this Court deems equitable and just.

December 6, 2022                                   Respectfully submitted,

<span></span>                                                    *s/ Walter E. Diercks*
                                                    Walter E. Diercks (D.C. Bar No. 161620)
                                                    (application for admission pending)
                                                    Rubin, Winston, Diercks, Harris & Cooke, LLP
                                                    1250 Connecticut Avenue, NW, Suite 700
                                                    Washington, DC 20036
                                                    (202) 861-0870
                                                    wdiercks@rwdhc.com


                                                    *s/ David C. Anderson*
                                                    David C. Anderson (P55258)
                                                    COLLINS EINHORN FARRELL PC
                                                    4000 Town Center, 9th Floor
                                                    Southfield, MI  48075
                                                    Tel.: (248) 355-4141
                                                    David.Anderson@ceflawyers.com

## **CERTIFICATE OF COMPLIANCE**

In accordance with Local Rule 7.2(b)(ii), I certify that this Brief complies with the word-count limitation set forth in Local Rule 7.2(b)(i). According to my word-processing system, Microsoft Word 2016, this Brief contains 3,479 words, excluding those portions of the Brief exempted.

                                        *s/ David C. Anderson*
                                        David C. Anderson (P55258)
                                        COLLINS EINHORN FARRELL PC
                                        4000 Town Center, 9th Floor
                                        Southfield, MI  48075
                                        Tel.: (248) 355-4141
                                        David.Anderson@ceflawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2022, I electronically filed the foregoing Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment and Defendant's Brief in Support of its Motion to Dismiss or, in the Alternative, for Summary Judgment with the Clerk of the Court using the ECF system, and that a copy was electronically served on all counsel of record via the ECF system.

*s/ David C. Anderson*
David C. Anderson (P55258)
COLLINS EINHORN FARRELL PC
4000 Town Center, 9th Floor
Southfield, MI  48075
Tel.: (248) 355-4141
David.Anderson@ceflawyers.com
